O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT DAVIS,<br><br>              Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>              Defendant. | Case No. EDCV 11-1386-OP<br><br>MEMORANDUM OPINION AND ORDER |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (ECF Nos. 7, 9.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR") and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 6 at 3.)

# I.

## **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

1) Whether the ALJ properly assessed Plaintiff's ability to perform other work in the regional or national economy;

2) Whether the ALJ properly considered Plaintiff's testimony and made proper credibility findings.

(JS at 2.)

# II.

## **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /
/ / /
/ / /

## III.

## DISCUSSION

**A.    The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairments of osteoarthritis of the left wrist and hand; lumbago; hypertension; gout; seizure disorder; depression; and obesity. (AR at 58.) Th ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work, with the nonexertional limitations of able to lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday, and sit for six hours out of an eight-hour workday, but must be able to alternate positions at one-hour intervals for one to five minutes to relieve discomfort; can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; can occasionally kneel, stoop, crouch or crawl; can occasionally use the left non-dominant arm for fine finger and gross manipulations; must avoid exposure to hazards such as unprotected heights and dangerous machinery; must avoid concentrated exposure to extreme cold, dusts, and other pulmonary irritants such as fumes, gases and odors, can deal with routine changes in the work setting and respond appropriately to supervisors, co-workers, and the public. (Id. at 60.)

Relying on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff was unable to perform his past relevant work of Laborer, Stores. (Id. at 65.) The ALJ also relied on the VE's testimony to determine that there were alternative occupations Plaintiff could perform, such as Order Caller (Dictionary of Occupational Titles ("DOT") No. 209.667-014); Ticket Taker (DOT No. 344.667-010); and Order Clerk, Food and Beverage (DOT No. 209.567-014). (Id. at 66.)

/ / /

/ / /

**B. The ALJ Properly Found Plaintiff Capable of Performing the Jobs of Order Caller, Ticket Taker, and Order Clerk.**

The ALJ asked the VE two hypothetical questions based on an individual who could lift and carry up to ten pounds; could sit for six hours of an eight-hour workday and would need to alternate positions at one-hour intervals for one to five minutes at a time; would be able to stand and walk a total of six hours of an eight-hour day; would be limited to occasionally climbing ramps and stairs, never climbing ladders, ropes or scaffolds; could occasionally kneel, stoop, crawl, and crouch; and would be unable to use the left non-dominant arm for gross manipulations such as grasping or handling; would not be able to use that arm for fine manipulations; would need to avoid exposure to hazards; would need to avoid concentrated exposure to extreme cold and pulmonary irritants; would be able to make simple work-related decisions, deal with routine changes and respond appropriately to supervisors, coworkers, and the general public. (Id. at 46-47.) In one hypothetical, the ALJ included the fact that the individual would need to use the left non-dominant arm, primarily as a guide with occasional use for fine and gross manipulations; and in the other hypothetical, she asked the VE to assume there was no use of the left non-dominant arm for gross or fine manipulations. (Id.) The VE concluded that an individual who had occasional use of the left non-dominant arm for fine and gross manipulations would be able to perform the jobs of Order Clerk, Order Caller, and Ticket Taker. (Id. at 48-49.) She also concluded that an individual who had no use of the left arm for gross or fine manipulations would still be able to perform the job of Order Clerk. (Id. at 49.) The ALJ ultimately adopted the conclusions of the VE as to Plaintiff's ability to perform these jobs based on occasional use of the left non-dominant arm for gross and fine manipulations. (Id. at 60, 66.)

Plaintiff contends that each of these jobs as described by the DOT is

4

inconsistent with Plaintiff's limitations as determined by the ALJ. (JS at 4.) Specifically, he contends that the jobs of Order Caller and Order Clerk require frequent handling and fingering, and the Ticket Taker job requires frequent handling and occasional fingering. (Id.) He claims, therefore, that the ALJ's reliance on the VE's testimony that the positions were consistent with the DOT was inaccurate. (Id.) He also contends the ALJ should have "secured the VE's reasonable explanation for the conflict" with the DOT. (Id.)

The ALJ has an affirmative responsibility to ask whether a conflict exists between the testimony of a VE and the DOT. Soc. Sec. Ruling ("SSR") 00–4p, 2000 WL 1898704, at *4; Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007). If there is a conflict between the DOT and testimony from the VE, an ALJ may accept testimony from a VE that contradicts the DOT, but "the record must contain 'persuasive evidence to support the deviation.'" Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). The ALJ must resolve any conflict by determining whether the VE's explanation is reasonable and provides sufficient support to justify deviating from the DOT. SSR 00-4p, 2000 WL 1898704, at *4; Massachi, 486 F.3d at 1153. An ALJ's failure to do so can be harmless error when there is no conflict or the VE provides a basis for relying on her testimony rather than on the DOT. Massachi, 486 F.3d at 1154 n.19. In this case, the ALJ did not question the VE as to whether her opinion deviated from the DOT. Instead, in her decision, the ALJ simply states that "the vocational expert's testimony is consistent with the information contained in the [DOT]." (AR at 67.)

**1.    Gross and Fine Manipulation.**

Although the ALJ identified Plaintiff's limitation regarding occasional fine and gross manipulations with the left hand, no such restrictions were identified with respect to the use of his right hand. (Id. at 47 (informing the VE

5

that "there are no restrictions to the right arm.").) There is nothing in the DOT that expressly states the jobs identified by the VE require fine or gross fingering with both hands. Nor, in the testimony of the VE, did she give any indication that any of the occupations required frequent fine or gross manipulation with both hands.[3] See, e.g., Carey v. Apfel, 230 F.3d 131, 146 (5th Cir. 2000) (person with use of one arm could perform the jobs of cashier and ticket taker, even though jobs required fingering and handling abilities; DOT does not contain requirement of bilateral fingering and handling); Diehl v. Barnhart, 357 F. Supp. 2d 804, 822 (E.D. Pa. 2005) (person with limited use of one arm could perform jobs requiring frequent reaching, handling, and fingering, and therefore there was no conflict between DOT and vocational expert's testimony to that effect); Feibusch v. Astrue, No. 07-00244 BMK, 2008 WL 583554, at *5 (D. Haw. Mar. 4, 2008) (citations omitted) ("[T]he use of two arms is not necessarily required for jobs that require reaching and handling."); McConnell v. Astrue, No. EDCV 08-667 JC, 2010 WL 1946728, at *7 (C.D. Cal. May 10, 2010).

**2. Conclusion.**

Based on the foregoing, there is no apparent inconsistency between the VE's opinion and the DOT descriptions of the jobs of Order Caller, Order Clerk, and Ticket Taker with respect to Plaintiff's ability to frequently perform gross and fine manipulation with the right hand or fingers, albeit only occasionally, with the left hand, or, as in the case of Order Clerk, not at all with

---

[3] In fact, when discussing a position of cafeteria attendant that she later rejected because it did not include the sit/stand option, the VE specifically noted that an individual in that position would be using their dominant hand except for when they were bringing things back and forth, "which would not be the primary majority of the time," thus indicating she had the left-hand limitations and the job requirements in mind. (AR at 48.)

6

the left hand. (AR at 49.) In fact, the VE's testimony that Plaintiff could perform the job of Order Clerk even precluding use of the left hand for any fingering or handling, demonstrates that she considered the relationship between the limitations set forth by the ALJ and the way the position is performed in the economy. Thus, there was no error.

**C.    The ALJ Properly Assessed Plaintiff's Credibility.**

    **1.    Background.**

As noted by the ALJ, Plaintiff testified that he was unable to work due to pain in the hips, right lower extremity, left hand, gout, and depression. (Id. at 61.) He complained that he had flare ups of his gout every time he tried to work and that it occurred daily, causing swelling and stiffness lasting about a week, although he later testified that his gout occurred once every other week. (Id.) He stated he had paranoia and stress, he could lift nothing with his left hand other than a piece of paper, he was unable to sit for more than ten minutes at a time or walk for a prolonged period of time, used a cane daily, continued to have problems with seizures, could not perform chores, occasionally went grocery shopping, and spent most of his day laying down and watching television. (Id.) In his Adult Function Report and exertional and asthma questionnaires, Plaintiff reported he did not usually walk because of severe pain in the back, knee, hip, and leg, did not carry anything over three pounds, sometimes needed help dressing, bathing, and caring for his hair, was unable to cook because he would forget, and was unable to walk half a block. (Id.)

In her opinion denying benefits, the ALJ rejected Plaintiff's subjective complaints as follows:

> The undersigned finds the claimant's allegations concerning the intensity, persistence, and limiting effects of his symptoms are less than fully credible. The claimant's statements are replete with inconsistent statements. For instance, the claimant claimed he had

gout daily, but then changed his testimony to say his gouty flare-ups occurred weekly. The claimant reported to his treating physician that his gout was controlled with medication, and he suffered from seizures, but the record reveals no evidence of any seizure incidents, in fact the records only mention the claimant's seizure when he runs out of medication. Furthermore, the claimant has appeared to exaggerate his impairment in his left hand. In an internal medicine consultative examination, the claimant registered zero pounds with his left hand, however formal examination revealed no evidence of muscle wasting typical with someone who has no force in the left hand. Moreover in a consultative examination, the examiner noted the claimant provided inconsistent statements, was evasive, and unable to provide symptoms to his alleged mental impairments. These inconsistent statements cast doubt on the claimant's overall credibility and allegations of the severity and limitations of his symptoms.

The credibility of the claimant's allegations regarding the severity of his symptoms and limitations is further diminished because those allegations are greater than expected in light of the objective evidence of record. The medical evidence indicates the claimant received routine conservative treatment for complaints of pain. The lack of more aggressive treatment suggests the claimant's symptoms and limitations were not as severe as he alleged. The positive objective clinical and diagnostic findings since the alleged onset date detailed below do not support more restrictive functional limitations than those assessed herein.

. . . .

After careful consideration of the evidence, the undersigned

>finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements . . . concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Id. at 62 (citations omitted).)

Plaintiff faults the ALJ for failing to specifically explain which parts of Plaintiff's testimony she found "not credible." (JS at 11.) He also complains that although the ALJ emphasized Plaintiff's statements regarding the frequency of his gout and seizures as evidence of lack of credibility, Plaintiff has a limited education, and testified that his seizures vary in frequency and that he does not always seek treatment for them, therefore, his testimony regarding seizures was not "inherently inconsistent." (Id. at 11-12.) He also notes that Plaintiff's testimony that he has constant gout pain and flare-ups every other week is not contradictory "as a person can experience both daily pain and weekly flare-ups that cause more severe pain." (Id. at 12.) Plaintiff concludes that the ALJ rejected Plaintiff's testimony for legally insufficient reasons and did not provide clear and convincing reasons for rejecting his testimony. (Id. at 13.) The Court disagrees.

**2.   Legal Standard.**

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990)

9

(an implicit finding that claimant was not credible is insufficient).

In assessing the credibility of the allegedly disabling subjective symptoms, an ALJ may properly consider "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and aggravating factors;" "[t]ype, dosage, effectiveness, and adverse side-effects of any medication;" "[t]reatment, other than medication;" "[f]unctional restrictions;" "[t]he claimant's daily activities;" "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment;" and "ordinary techniques of credibility evaluation." Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc) (citations omitted); see also Soc. Sec. Ruling 96-7p;[4] 20 C.F.R. 404.1529 (2005); Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989) (an ALJ may take into account a claimant's level of activity, along with other probative evidence of disability or lack thereof); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily

---

[4] The Ruling lists factors to be considered such as: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Ruling 96-7p.

activities inconsistent with total disability, and helpful medication); Johnson, 60 F.3d at 1432 (ALJ may properly rely on the fact that only conservative treatment had been prescribed).

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment that could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell, 947 F.2d at 343. The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9thCir. 2002); Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Bunnell, 947 F.2d at 345.

### 3. Analysis.

Here, the ALJ set forth numerous reasons for discounting Plaintiff's credibility: (1) there were numerous inconsistencies in Plaintiff's statements; (2) Plaintiff appeared to exaggerate his left-hand impairment; (3) Plaintiff's allegations regarding the severity of his symptoms were greater than expected in light of the objective medical evidence, the conservative treatment he received for his complaints, and his positive response to medication for those symptoms and limitations. (AR at 62.)

#### a. Inconsistencies.

In assessing Plaintiff's credibility, the ALJ relied on numerous inconsistencies in Plaintiff's testimony. For instance, she noted that he gave inconsistent testimony about when he woke up and took his medications. (Id.

1  at 61.) She also noted that although he claimed he had gout daily, he later
2  testified that his flare-ups occurred weekly, and he had reported to his treating
3  physician that his gout was controlled with medication and that he only
4  occasionally had aches in his joints. (Id. at 62 (citation omitted).) Although he
5  claimed he suffered from continuing seizures, there was no evidence in the
6  record of seizure incidents. (Id. (citation omitted).) Additionally, the
7  psychiatric consultative examiner also noted that Plaintiff provided inconsistent
8  statements, was evasive, and was unable to provide symptoms relating to his
9  alleged mental impairment. (Id.)
10       An ALJ may properly consider "testimony from physicians . . .
11 concerning the nature, severity, and effect of the symptoms of which [claimant]
12 complains," and may properly rely on inconsistencies between claimant's
13 testimony and claimant's conduct and daily activities. See, e.g., Thomas, 278
14 F.3d at 958-59 (citation omitted). Moreover, the fact that Plaintiff was evasive
15 or uncooperative during the consultative examination is a factor that the ALJ
16 may consider in determining credibility. Id.
17       Accordingly, the Court finds that there was no error in the ALJ
18 considering Plaintiff's inconsistent statements when assessing the credibility of
19 Plaintiff's allegations of disabling symptoms and limitations.
20       **b.   Symptom Exaggeration.**
21       The ALJ also found that Plaintiff appeared to exaggerate his left-hand
22 impairment. (AR at 62.) In support, she noted that the internal medicine
23 consultative examiner found that although Plaintiff registered zero pounds
24 force with his left hand, there was no evidence of muscle wasting as would be
25 typical with someone who has no force in the left hand. (Id. (citation omitted).)
26       Under Ninth Circuit jurisprudence, the ALJ could properly rely on the
27 lack of objective evidence to substantiate plaintiff's claims, and on the
28 inconsistencies between a plaintiff's claims and the objective medical evidence.

See, e.g., Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Morgan, 169 F.3d at 600 (ALJ may properly consider conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell, 161 F.3d at 602 (ALJ may properly rely on weak objective support for the claimant's subjective complaints); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on lack of objective evidence to support claimant's subjective complaints); Nyman, 779 F.2d at 531 (noting that "a claimant's self-serving statements may be disregarded to the extent they are unsupported by objective findings"); see also Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir.2001) (holding that a credibility determination based on, among other things, a tendency to exaggerate, was supported by substantial evidence).

Accordingly, the Court finds that there was no error in the ALJ considering Plaintiff's symptom exaggeration when assessing the credibility of Plaintiff's allegations of disabling symptoms and limitations.

### c. **Objective Medical Evidence Did Not Support Plaintiff's Allegations of the Severity of His Symptoms.**

The ALJ also noted that Plaintiff's allegations of the severity of his symptoms and limitations, specifically with regard to the frequency of his seizures, and his episodic flare ups of his gout, were greater than expected in light of the objective medical evidence. In addition to his inconsistent statements, the ALJ noted the conservative nature of Plaintiff's treatment, and the fact that his pain from gout and his seizure condition both responded to medication. (AR at 62.)

Although the lack of objective medical evidence alone cannot support an ALJ's credibility finding, it is a proper factor for the ALJ to consider. Rollins,

13

261 F.3d at 857 (objective medical evidence may not be sole reason for discounting credibility but is nonetheless a legitimate and relevant factor to be considered in assessing credibility); Morgan, 169 F.3d at 600 (ALJ may properly rely on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell, 161 F.3d at 602 (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication). It is also appropriate for the ALJ to rely on the fact that the claimant has received only conservative treatment and that medications appear to alleviate the symptoms. Johnson, 60 F.3d at 1432 (ALJ may properly rely on the fact that only conservative treatment had been prescribed); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medication are not disabling); see also Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (the fact that conservative treatment, such as physical therapy, TENS unit, and non-steroidal inflammatory drugs, improved supposedly disabling pain, discredited claimant's testimony); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (rejecting disability claim where claimant's pain and symptoms were fairly controlled by medications).

Accordingly, the Court finds that there was no error in the ALJ considering the objective medical evidence, including conservative treatment and response to medications, when assessing the credibility of Plaintiff's allegations of disabling symptoms and limitations.

### 4. Conclusion.

The Court notes that the ALJ did not find Plaintiff's credibility to be entirely unbelievable, just that it was not credible to the extent Plaintiff suggested greater restrictions than those found in the RFC. As noted by the ALJ, she "generously consider[ed]" Plaintiff's subjective complaints in determining his RFC. (AR at 64.)

1       Based on the foregoing, the Court finds that the ALJ stated clear and
2 convincing reasons, supported by substantial evidence in the record, for
3 rejecting Plaintiff's credibility and, therefore, did not arbitrarily discredit
4 Plaintiff's subjective testimony.  Thus, relief is not warranted on this claim.

### IV.
### **ORDER**

7       Based on the foregoing, IT THEREFORE IS ORDERED that Judgment
8 be entered affirming the decision of the Commissioner, and dismissing this
9 action with prejudice.

DATED: March 29, 2012

_____
HONORABLE OSWALD PARADA
United States Magistrate Judge